In re ROZEL INDUSTRIES, INC.,
d/b/a The Video King, a
Delaware corporation, Debtor.

ROZEL INDUSTRIES, INC., Plaintiff,

v.

INTERNAL REVENUE
SERVICE, Defendant.

Bankruptcy No. 85 B 515.
Adv. No. 89 A 0141.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 10, 1990.
Agreed Order Dec. 3, 1990.

David A. Golin, Rosenthal & Schanfield, Chicago, Ill., for plaintiff.

Benjamin R. Norris, Trial Atty., Tax. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

ERWIN I. KATZ, Bankruptcy Judge.

*Background:*

This case was commenced January 14, 1985, when the debtor, Rozel Industries, filed a voluntary chapter 11 petition in bankruptcy. On February 13, 1989, the debtor filed a Complaint for the Determination of Debtor's Tax Liability to the Internal Revenue Service. According to the debtor's complaint, the debtor, Rozel Industries (hereinafter Rozel), incurred a federal income tax liability of $146,832 during the year 1982, which was paid to the Internal Revenue Service (hereinafter "IRS"). During the year 1983, the debtor incurred an income tax liability of $71,460. This amount, however, was not paid to the IRS. During the year 1984, Rozel incurred a net operating loss which it was entitled to carryback and deduct in taxable years 1983 and 1982. The complaint alleged that, as a result of this carryback, Rozel's tax liability for 1983 and 1982 was reduced to zero and it was entitled to a refund of taxes paid in 1982 in the amount of $146,832.

Prior to the filing of the debtor's complaint, the IRS had filed several proof of claims for pre-petition income, withholding, and unemployment tax liabilities for periods during 1983, 1984, and 1985. Specifically, Claim # I–29 asserted priority tax claims aggregating $117,285.06,[1] with an

1.

| Tax | Tax Period | Amount | Interest to Petition Date |
|---|---|---|---|
| Withholding | 2nd Quarter–1984 | 0 | $14,770.47 |
| Withholding | 3rd Quarter–1984 | 0 | 7,008.26 |

additional unsecured general claim for penalties on these claims in the amount of $91,506.85. In its complaint, Rozel conceded liability as to this amount, except for the income tax relating to 1983 which it was contesting on the basis of the NOL carryback.

In addition, Claim # I–28 asserted a request for payment of administrative claims in the aggregate amount of $50,956.20, consisting of $37,655.12 for post-petition unemployment taxes in 1985; $4,895.54 for penalties, and $8,405.99 for interest. The claim also asserted a right to continuing accrual of interest and penalties on these amounts. In its complaint, Rozel objected to and denied liability for the taxes and charges in Claim # I–28.

The IRS answered the complaint, denied debtor's allegation that no income taxes were owed for 1983, stated that it lacked sufficient information to respond to the other allegations, and requested a determination by the court of the debtor's liability for the federal taxes placed in issue by the complaint.

The question of liability was subsequently settled by the parties and an Agreed Order (hereinafter "Agreed Order") was entered on October 27, 1989, which provided:

It is hereby agreed and ordered that:

1. Due to a carryback of net operating loss for the year 1984, Rozel is entitled to a refund for the income taxes which it paid for the year 1982 in the amount of $147,331.61.

2. Rozel is further entitled to the interest which has accrued and which shall continue to accrue on said refund since March 15, 1985. [The following language was stricken out by the parties: "As of October 31, 1989, the amount of such interest will be $88,695.21."]

3. Due to a carryback of net operating loss for the year 1984, Rozel's liability to the Service for income taxes for the year 1983 is zero.

4. The Service shall be entitled to set off the amount of the refund and accrued interest due Rozel against the claim(s) of the Service allowed by this Court. Any excess amount shall be paid to Rozel.

On the basis of these stipulations, the IRS filed an amended and consolidated proof of claim for pre-petition tax liabilities in the amount of $109,086.80, which replaces Claim # I–29. Likewise, an amended claim for administrative claims in the amount of $2,080.04 plus continuing interest and penalties was filed to replace Claim # I–28.

The present dispute relates to the proper implementation of the Agreed Order entered by the Court on October 27, 1989. On March 26, 1990, the debtor presented a Motion to Enforce the Terms of the Prior Agreed Order. The Motion alleged that the amount of the refund due to Rozel was $248,705.01 ($147,331.61 principal and $101,373.40 interest) and that the amount of tax liability which this refund should be setoff against was $111,219.22, as evidenced by the proof of claims filed by the IRS on January 12, 1990. Thus the debtor requested that $137,485.79 (the excess of 248,705.01 over 111,219.22) be paid over to it. The IRS objected to these calculations and responded that since the amount of the refund and interest owed to the debtor exceeded the tax liabilities owed to the it, the IRS was entitled to post-petition interest on the debtor's tax liabilities as part of its right to setoff an oversecured claim pursuant to § 506(b).

The positions taken by the parties raised several related issues concerning whether there was a right of setoff pursuant to the Bankruptcy Code, whether the setoff in

| Tax | Tax Period | Amount | Interest to Petition Date |
| --- | --- | --- | --- |
| Withholding | 4th Quarter–1984 | $ 2,175.60 | 0 |
| Income | 1983 | 71,460.00 | 0 |
| Unemployment | 1984 | 20,143.57 | 0 |
| Unemployment | Jan. 1–14, 1985 | 1,727.16 | 0 |
| | TOTAL | $95,506.33 | $21,778.73 |
| | COMBINED TOTAL: | $117,285.06 | |

this case had already been effected by the IRS, and what impact, if any, the exercise of the setoff would have on the right to interest thereafter. The court heard lengthy arguments on these matters, allowed supplemental briefs to be filed, and the matter was taken under advisement on May 23, 1990.

After fully considering the arguments raised by both parties, for the reasons stated below, the court finds that the IRS is entitled to post-petition accrued interest on the debtor's pre-petition tax liabilities at the statutory rate of interest set out in § 6611 of the Internal Revenue Code. I.R.C. § 6611 (1986). This right to accrue interest, however, only continued until the setoff was effected and the IRS is not entitled to accrue any interest thereafter. The court finds that the setoff in this case occurred at the time when the IRS failed to fullfil its statutory duty to respond to a request for refund or net operating loss adjustment by allowing, disallowing or challenging the request as required by § 6411. I.R.C. § 6411 (1986). The IRS is entitled to interest accrued on the tax liability up to this date to the extent that the tax refund plus interest exceeded the principal liability on that date. Any remaining balance is to be paid to the debtor together with interest accrued on this net refund from the date of the setoff to the date of payment.

*Discussion:*

1. Secured Claims and the Right to Post-petition Interest

■ Section 506(a) of the Bankruptcy Code grants secured status to a claim which is subject to setoff under § 553 to the extent of the amount subject to setoff. 11 U.S.C. § 506(a) (1989). When such a claim is oversecured in that the amount subject to setoff exceeds the claim, the creditor is then entitled to post-petition interest on that claim up to the amount of the excess under § 506(b). The Supreme Court recently discussed the intended scope of § 506(b) in *United States v. Ron Pair Industries*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The Court held that § 506(b) entitles a creditor to receive

post-petition interest on a nonconsensual oversecured claim in bankruptcy. The Court concluded that there is no significant reason why Congress would have intended, or any policy reason which would compel that consensual and nonconsensual liens be treated differently in allowing post-petition interest and that the language of § 506(b) clearly directs that post-petition interest be paid on all oversecured claims. *Id.* 109 S.Ct. at 1031.

Thus, although the Court did not directly address the issue, *Ron Pair* establishes that the right to post-petition interest applies in the context of a claim which is oversecured as defined in § 506(a) by virtue of the creditor's right of setoff. Section 506(b) was so applied by the bankruptcy court in *Matter of Kennedy Mortgage Co.*, 23 B.R. 466 (Bankr.D.N.J.1982), which held that post-petition interest on a pre-petition note owed by the debtor was allowed on the basis of the creditor's right to setoff the pre-petition claim against the balance of the debtor's bank account.

2. Right to Setoff Under Section 553:

Unlike many setoff cases involving the IRS, there has been no request for sanctions for violation of the automatic stay in exercising the right of setoff and the court does not address this issue.

■ Section 553 provides that Title 11 does not affect the right of any creditor to offset a mutual debt owed to the debtor that arose before the commencement of the case against a claim of the creditor that arose before the commencement of the case. Section 553 does not grant such a right, but it does not restrict or impair such a right if it exists under other applicable law. The applicable law in this case is § 6402(a) of the Internal Revenue Code which authorizes the IRS to offset a taxpayer's overpayment against any outstanding tax liabilities. This right was also recognized implicitly by the parties in the Agreed Order which provides that the IRS is entitled to setoff any allowed claims it may have. Section 553 of the Bankruptcy Code allows the IRS to assert this right

against a bankrupt taxpayer as long as certain elements are present.

■ The requirements of § 553 are (1) that the claim and debt to be offset are mutual, meaning they are between the same parties and are due and owing in the same capacity, and (2) that each of the respective debts arose before the commencement of the case. In this case, the claim of the IRS and the refund owed to the debtor are clearly mutual. The parties and relationship are the same in each claim—tax collector and taxpayer.

■ Likewise, each of these items is a claim which arose prior to the commencement of the case. The debtor filed a voluntary chapter 11 petition on January 14, 1985. For any right of setoff to exist under § 553, both the tax liability and right of tax refund must have arisen prior to this date. Clearly the tax liability of Rozel Industries arose before the commencement of the case.[2] Such liability arises automatically and is not contingent upon the debtor's filing a tax return or independent assessment by the IRS. The same is true of the debtor's right to a tax refund.

■ To obtain a tax refund, a taxpayer (debtor) must file a claim for refund pursuant to § 6511 of the Internal Revenue Code. Section 6511 sets forth certain time limits and formal requirements for claiming a refund, and if these requirements are not followed the refund will not be authorized. This does not mean, however, that the right of refund does not exist substantively until it is claimed by the taxpayer. A refund for a taxable year prior to the petition date actually arises prior to the commencement of the case even though it is not claimed by the taxpayer (debtor) until after the filing of the petition and the return claiming it was not due until after the petition date.

■ There is substantial case law discussing when a claim or debt arose for purposes of a § 553 setoff. Generally, a claim or debt must be found to be absolute-

ly owing at the time of the filing of the petition to be considered a pre-petition item. *See* 4 *Collier on Bankruptcy* ¶ 553.10(2) (15th ed. 1982). This does not necessarily require that the amount of such item be specifically known or that it be currently due, only that some definite liability has accrued. *In Re NTG. Industries, Inc.*, 103 B.R. 195 (Bankr.N.D.Ill.1989); *In Re Communicall Central, Inc.*, 106 B.R. 540 (Bankr.N.D.Ill.1989).

■ Applying this standard in the context of tax refunds, the right to a tax refund arises at the end of the tax year to which the refund relates. *See, e.g., In Re Conti*, 50 B.R. 142 (Bankr.E.D.Va.1985). In *Conti*, the court was faced with the issue of whether the IRS could offset a refund owed to the taxpayer against tax liabilities of the debtor which had been discharged in the debtor's chapter 13 case. The Chapter 13 petition was filed on August 3, 1983, and the discharge was granted on January 31, 1984. Subsequently, the IRS sought to offset a refund owed to the debtor for 1982 taxes against the discharged tax liability. The refund related to taxable year 1982 but the debtor did not file her 1982 tax return until April 6, 1984, which was post-petition. Thus, one of the issues raised regarding the setoff was whether the right of refund arose prior to the commencement of the case and could be setoff against a pre-petition tax liability.

The court held that "[t]he date of allowance of a tax refund pursuant to [I.R.C.] § 6407 is not the same as the date the obligation arose for purposes of § 553 of the Bankruptcy Code." *Id.* at 148. "[T]he obligation of the IRS to the debtor arose as of December 31, 1982, the end of the debtor's tax year, subject only to the debtor's filing a tax return claiming the refund within the time limits prescribed by IRC § 6511(a) (1982)." *Id.* The court reasoned that the provisions of § 6511 of the Internal Revenue Code are only procedural requirements which will extinguish that right of refund if not followed, but that these procedural rules are not a prerequisite to the substantive right of refund, an obli-

---

**2.** See discussion, *supra* note 1, of proof of claims filed by IRS listing taxable periods involved.

gation owed to the debtor which arose at the end of the tax year. *Id.*

The same conclusion was reached by the Bankruptcy Court for the Eastern District of Tennessee in *In Re W.L. Jackson Mfg. Co.*, 50 B.R. 506 (Bankr.E.D.Tenn.1985), on the basis of the decision of the Supreme Court in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966). *Segal* held that taxpayer refunds arising from an NOL carryback for the taxable year in which the petition was filed constituted property of the estate, within the meaning of § 70(a) of the Bankruptcy Act, since they represented inchoate rights which existed and were transferable as of the petition date even though attributable to an NOL for a taxable year which closed post-petition. *Id.* Thus, even though not claimed by the taxpayer until after the petition date, the claims were property of the estate at the time of filing.

The bankruptcy court in *Jackson Manufacturing* concluded that even though *Segal* was decided under the Bankruptcy Act the result was intended to apply under the present Bankruptcy Code. According to the *Jackson* court, "*Segal* effectively held that a tax refund based on overpayment was a pre-petition debt of the IRS to the taxpayer, even though a refund claim was not filed until post-petition." 50 B.R. at 508. Thus it concluded that the debtor's claim for a refund of pre-petition taxes due to an NOL carryback which was claimed post-petition was a pre-petition debt of the IRS which could be offset against the debtor's pre-petition tax liabilities. The court stressed the need to prevent the manipulation of the pre-petition/post-petition status of a refund claim which could occur if the determination were tied solely to when the refund was claimed by the taxpayer. *Id.*

Subsequent to the *Conti* and *Jackson Manufacturing* decisions, other courts facing the same basic issue concluded that the right of refund arose at the end of the year. *See, e.g., In Re Mason*, 79 B.R. 786 (Bankr.N.D.Ill.1987); *In Re Eggemeyer*, 75 B.R. 20 (Bankr.S.D.Ill.1987). In *Eggemeyer*, the court stated that "for purposes of § 553, income tax refunds are 'absolutely owing' on December 31 of the year in which the overpayment is made or the liability accrues. The date on which the return is filed is not relevant in determining when the debt arose." 75 B.R. at 22 (Bankr.S.D.Ill.1987) (citing *In Re Conti*).

Likewise, the court in *Mason* stated that "It is clear that tax refunds that the debtor is entitled to at the time of filing are property of the estate." 79 B.R. at 787 (citing *In Re Guerrero*, 30 B.R. 463 (Bankr.N.D. Ind.1983); *In Re Wilson*, 29 B.R. 54 (Bankr.W.D.Ark.1982)). "Here, the source of the setoff was a tax overpayment that the debtor became entitled to on January 1, 1987.... Insofar as these funds represent monies available prior to the filing of the petition, a set-off is allowable...." *Id.* at 788.

The decisions cited in *Mason* focus on whether a tax refund for the year in which the petition is filed is property of the estate and thus subject to a turnover order or setoff. This is the same basic issue as that addressed by the Supreme Court in *Segal* now placed in the context of a setoff under § 553 of the Bankruptcy Code. *In Re Wilson*, 29 B.R. 54 (Bankr.W.D.Ark.1982), held that the debtor's right to a tax refund for the year in which the petition is filed accrues pro rata during the year and thus a portion of that ultimate refund is property of the estate and subject to an IRS setoff. The court reasoned by reference to the language of § 541 which includes all legal or equitable interests of the debtor in the estate and concluded that "[g]iven the fact that the, albeit inchoate, right to a tax refund was 'property of the estate' at the time of filing of the debtors' petition herein, it would be anomalous to now hold that it concurrently lacked sufficient specificity and mutuality to permit an offset ... under § 553." *Id.* at 57–58. Thus, the debtors' 1980 tax refund claimed in 1981 was separated into a pre-petition portion (deemed to accrue prior to November 19, 1980, the petition date) which was subject to setoff by the IRS, and a post-petition portion, which was not property of the estate. *Id.* at 58.

As the above discussion demonstrates, there are several decisions which hold that

a tax refund for purposes of § 553 arises at the end of the taxable year to which it relates, and not when that right of refund is claimed by the taxpayer/debtor. This rule can be justified in that it creates a bright-line test which is easily applied. The rule also prevents a debtor from transforming his right to a tax refund into a post-petition claim merely by filing his tax return or claim for refund after filing the bankruptcy case.

■■■■ Although this rule is not entirely consistent with the accrual of interest provisions in § 6611 of the Internal Revenue Code, the substantive right of refund actually arises at the end of the taxable year to which it relates, which was pre-petition in this case. Section 6611 provides that the right of interest does not begin until the deadline for filing or until the return is actually filed, whichever is later, and if the refund is processed within 45 days of that date there is no right of interest at all. Thus, for purposes of calculating the taxpayer's right to interest on a refund claim, the tax code and the Service treat the right of refund as though it arose when the return was due or when it was filed if filed late. Although the court recognizes some inconsistency here, it agrees with the positions set forth in *Conti*, that the procedures for claiming a refund set out in § 6407 are merely implementation mechanisms which do not create the substantive right, and in *Jackson Manufacturing, Wilson*, and *Mason*, that the right of refund exists and accrues throughout the tax year as a right which could be transferred or assigned. Thus, the court rules that both the tax liability and the tax refund of the debtor are pre-petition obligations which may be offset pursuant to § 553.

The tax refund claim in this case is distinguishable from the clearly contingent breach of contract litigation claims involved in *Cooper–Jarret, Inc. v. Central Transport, Inc.*, 726 F.2d 93 (3d Cir.1984). That court ruled that the liability of the creditor under a settlement agreement was a post-petition obligation which did not relate back to the pre-petition transactions forming the basis of the settled lawsuit. The court stated that "[t]he settlement agree-ment is itself a contract, separate and independent from the dispute giving rise to the [settled] lawsuit.... [which] extinguishes those legal rights which the parties sought to enforce through litigation in exchange for those rights secured by the contract." *Id.* at 96. Thus, that liability could not be offset against the creditor's claim against the debtor for unpaid pre-petition freight charges.

The court finds that the situation in *Cooper–Jarret* is distinguishable from this case. The claim in *Cooper–Jarret* for alleged breach of contract was totally contingent prior to the settlement. Here the debtor's refund claim is a right created by statutory law which arises independently of any action to claim it. The Agreed Order merely restated this right, it did not create or modify it.

Furthermore, the Third Circuit's approach was rejected by the Fifth Circuit in *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030 (5th Cir.1987). *See also In Re Nickerson & Nickerson, Inc.*, 62 B.R. 83 (Bankr.D.Neb.1986); *In Re Morristown Lincoln–Mercury, Inc.*, 42 B.R. 413 (Bankr.E.D.Tenn.1984); and *In Re Delta Energy Resources, Inc.*, 67 B.R. 8 (Bankr.W.D.La.1986). *Nickerson* and *Lincoln–Mercury* held that a claim which is not yet due or which is contingent or unliquidated pre-petition still constitutes a pre-petition claim for § 553 purposes. *Delta Energy* held that a right of refund relating to overpayment was a pre-petition debt since all the transactions which gave rise to the debt occurred prior to the petition date. Although not binding authority, these cases do appear to be the majority view. A separate determination needs to be made regarding the pre-petition/post-petition status of the interest owed to the debtor in connection with the tax refund. Section 506(b) allows interest to the extent that the amount subject to setoff exceeds the creditor's claim. In this case, the creditor's claim is for $109,086.80 (as shown in its amended proof of claim) while the amount subject to setoff is the tax refund of $147,-331.61, which carries a right to interest thereon. This raises the issue of whether the amount subject to setoff includes the

related interest or whether that interest should be treated separately as arising after the filing of the petition. Specifically, is the IRS's right to interest under § 506(b) limited to the excess of $147,331.61 over $109,086.80, or is the limit to be the total excess of the refund plus accrued interest over the IRS claim.

The Agreed Order states that the "Service shall be entitled to set-off the refund and accrued interest against its claims as allowed by this court." Thus, it appears that the parties contemplated a complete setoff. Furthermore, this is consistent with the purpose of § 553 and § 506.

In many cases, as here, the value of the amount subject to setoff or the secured property will fluctuate and may increase the excess amount available for recovery under § 506(b). The Code seems to contemplate that the creditor would be entitled to post-petition interest up to the full value of the property at the time it actually recovers its claim. Section 506(a) states that the valuation is to be made in light of the purpose of the valuation and proposed disposition of the property. The purpose of § 506(b) is to allow the creditor to realize the largest possible amount from the security since that was the expectation underlying the claim. "[U]ntil the secured creditor's claim plus interest has eaten up the entire value of the security the payment of that interest does not infringe the reasonable expectations of any other creditor." *In the Matter of Vincent and Barbara Lapiana*, 909 F.2d 221, 223 (7th Cir. 1990). Applying this rationale, the value of the claim subject to setoff is increasing due to interest accrual and this full amount is subject to setoff. Furthermore, the application of § 506(b) to allow post-petition interest is within the discretion of the court and should be aimed at furthering equity and fairness between the parties. *Id.* at 223–24. In this case, there is no equitable reason for limiting the setoff to only the principal amount of the refund due to the debtor. The court concludes that the purpose of § 506(b) and § 553 make it clear that the amount subject to setoff is the full value of the refund plus accrued interest thereon up to the date of setoff.

It may be argued that treating post-petition interest as part of the amount subject to setoff increases the potential recovery and creates an incentive for the IRS and other creditors to delay payment of a refund or setoff. Such intentional delay, however, would in fact constitute the exercise of the setoff right thus ending the accrual of further interest. Furthermore, such a setoff would violate the automatic stay and constitute grounds for sanctions pursuant to § 362(h). Similarly, complaints that the allowance of post-petition interest in the amount subject to setoff creates a preference for these creditors merely acknowledges a preference inherent in § 553 and § 506(b) and does not present a valid argument for excluding post-petition interest from the amount subject to setoff.

Since the tax refund and related interest is a pre-petition obligation and the tax liability is also a pre-petition obligation, these amounts may be setoff pursuant to § 553 and interest on that pre-petition tax liability may also be recovered by the IRS as an oversecured creditor under § 506. This issue was addressed by the court in *Matter of Kennedy Mortgage Co.*, 23 B.R. 466 (Bankr.D.N.J.1982). In *Kennedy Mortgage Co.*, at the time the petition was filed, the debtor owed the Bank the principal amount of several loans as well as accrued interest. These loans were secured by several mortgages. Subsequent to the petition date, the debtor and Bank reached an agreement which allowed the Bank to setoff the funds in the debtor's account against the principal and pre-petition accrued interest. The interest which had accrued post-petition on the loans was not part of this agreement. The Bank sought to recover this claim for post-petition interest (and also attorney's fees) from the remaining funds in the debtor's account pursuant to § 506(b) on the grounds that it was oversecured under § 506(a) by virtue of its previously exercised right to setoff the notes against the debtor's account under § 553.

The court concluded that the post-petition interest was part of the pre-petition claim on the notes and not an independent claim against the estate, thus the setoff

right associated with the notes made this interest eligible for § 506(b) treatment. *Id.* at 472. "The right to interest under the notes is not a separate right to payment but is merely the automatic accrual of what was due under the terms of the notes." *Id.* at 472. Since the Bank's claim on the notes clearly arose pre-petition, the interest and fees which were provided for in the notes were held to be part of this claim and the court allowed a recovery of the post-petition interest at the contract rate against the funds remaining in the debtor's account.

Likewise, in this case the post-petition interest which has accrued on the debtor's tax liability would constitute a part of the tax liability which arose pre-petition and is subject to setoff, so that the interest accrued up to the setoff date is allowable to the extent provided in § 506(b).

### 3. Determination of Setoff Date

The IRS had a right to setoff its claims for outstanding tax liabilities against the debtor's right of refund under § 553, and it must now be determined when such a setoff occur(s)/(ed) and how much interest the IRS may be entitled to under § 506(a) & (b).

The amount subject to setoff is the principal amount of the tax refund, $147,331.61, plus interest accrued thereon up to the date of the setoff. Thus, the IRS is entitled to post-petition interest on its claim at the rate and terms set forth in the Internal Revenue Code, subject, however, to a maximum limit of the excess of the amount subject to setoff over the IRS claim. This post-petition interest only accrues until the setoff occurs. The IRS would not be entitled to interest past the date on which the setoff actually occurred.

In *I.R.S. v. Norton,* 717 F.2d 767 (3d Cir.1983), the appellate court addressed the issue of when a § 553 setoff occurs. The debtors in *Norton* filed a chapter 13 petition on October 2, 1980, which listed the IRS as a priority creditor. In April 1981, prior to confirmation of their plan, debtors filed a tax return for 1980 claiming a refund for the taxable year. The IRS retained a portion of the claimed refund in satisfaction of the pre-existing tax liability. The debtors sought to have this portion of the refund paid over to them on the grounds that the refund was not properly subject to setoff without a prior release from the automatic stay. The IRS argued that the refund retained had not been setoff against the tax liability but rather that the funds had merely been "frozen" to preserve the setoff right until the stay was lifted. *Id.* at 771. Referring to the language of § 6402 of the Internal Revenue Code, which authorizes the IRS to "credit" an overpayment against outstanding tax liabilities, the IRS concluded that no setoff had occurred until the amount was actually credited against the tax due. *Id.* at 772.

The Bankruptcy Court rejected this argument and ruled that under the applicable state law governing the right of setoff such a right was deemed to be exercised upon sufficient evidence of intent and that the retention by the IRS of funds it admitted were due the taxpayer constituted such intent and setoff. *Id.* The appellate court affirmed this holding and found that § 553 requires the court to exercise equitable discretion in applying the right of setoff; that state law controls the right of setoff and when it occurred rather than the Internal Revenue Code; that such a setoff in fact occurred upon retention of the funds; and that the exercise of this right was prohibited by the automatic stay. *Id.* Thus, the freezing of a portion of the debtors' refund constituted an impermissible setoff.

The act of withholding funds which the IRS admitted were owed to the debtor as a refund of overpayment exhibited sufficient intent to effect a setoff. Such action must be treated as an intentional setoff which is subject to the automatic stay under § 362(a)(7). If creditors were allowed to hold or freeze funds of the debtor indefinitely or until the case closed, the purpose and operation of a bankruptcy reorganization or rehabilitation would be impaired.

The need to protect debtors from intentional freezes or withholdings was also recognized in *United States v. Reynolds,* 764 F.2d 1004 (4th Cir.1985). The district and

appellate courts adopted the position taken in *Norton* that such action must be treated as an intentional setoff which is subject to the automatic stay under § 362(a)(7). The debtors filed a chapter 13 petition in 1980 which listed the IRS as a creditor for delinquent taxes. The IRS was duly notified of the meeting of creditors and confirmation hearing on the debtors' plan and presented no objections thereto. After the plan was confirmed, the debtors' filed a late tax return which claimed a refund for the taxable year. The IRS retained a portion of the claimed refund essentially equivalent to the unpaid taxes shown on the petition and paid over only the excess refund. The district court held that this action was an exercise of the IRS's setoff rights under the reasoning of *Norton* and the appellate court affirmed this ruling. *Id.* at 1006. Although the appellate court found no controlling state law in Virginia, it concluded that the policy and rehabilitative purpose of bankruptcy would be defeated if creditors were able to "freeze" the accounts or monies of the debtor indefinitely or until the case closed. Thus it was necessary to treat such an action as a setoff and the automatic stay would apply. *Id.* at 1007.

Applying this rationale to the instant case, the IRS would be deemed to have exercised its right of setoff at the time when the refund was found to be due to the debtor but was not paid over. Although the debtor claims it filed a request for refund as early as 1985, there was no actual determination that the debtor was entitled to such a refund until the entry of the Agreed Order in 1989. The failure of the IRS to respond or process a refund claim does not, however, preclude a finding that it has effected a setoff by virtue of this delay or withholding. It is precisely this type of delay which frustrates the purpose of the bankruptcy and which mandates that the action be treated as a setoff. This court finds that the IRS delayed processing of the refund claim in violation of its statutory duties set out in the Internal Revenue Code and that such inaction constituted an exercise of its right of setoff.[3]

Section 6411(a) & (b) of the Internal Revenue Code requires the IRS to respond to an application for adjustment pursuant to an NOL carryback within 90 days of the actual filing of the application or the last day for filing, whichever is later. Within this 90 day period, the Secretary is obligated to review the application, determine that it does not contain any material errors or omissions, calculate the amount of the tax decrease due to the NOL carryback, credit the taxpayer for this tax decrease, and refund any excess amount which is not subject to setoff. *See also* T.Reg. 301.-6411-1(a)(2). Alternatively, either concurrently or if the IRS fails to act on such an adjustment by allowance or disallowance, the taxpayer may file a claim for refund. This claim for refund must be disallowed or acted upon by the Secretary within 6 months of the date of filing. If the Secretary fails to take such action within 6 months, the taxpayer is free to bring suit against the IRS. T.Reg. 301.6411-1(a)(2); 301.6411-3(c).

On the basis of these provisions, the IRS is under a duty to respond to a refund or adjustment request within 6 months at the longest and a failure to do so is grounds for seeking adjudication of the claim. At that point, the IRS is deemed to be intentionally withholding funds claimed by the taxpayer. This is also the date on which the IRS would be deemed to have effected a setoff in this situation. If the IRS is allowed to continue delaying the adjudication of a claimed refund, it is essentially the same as allowing them to freeze the taxpayer's account. If there is an on-going active dispute as to the refund claim, begun within the 6 month period, the IRS is not merely withholding or freezing the request and setoff would not necessarily have occurred. But when the IRS fails to fulfill its duty to act on such a request, it should be treated as intentionally withholding funds.

The debtor alleges that the refund was originally claimed either in the fall of 1985

---

**3.** The parties have not raised the issue of sanctions for violation of the automatic stay and the court does not address this issue.

or in June of 1986.[4] The record indicates some confusion as to when the IRS acknowledges actual receipt of the claim for the 1984 NOL carryback and related refund. According to the debtor, the first request was submitted as a Form 1139 Application for Adjustment, which would make the 90 day rule applicable. The second request, according to the debtor, was submitted as a Form 1120X Amended Return which would make the 6 month rule applicable. There is no information in the record as to what action the IRS took after it did in fact receive notice of the refund claim. The Service apparently did not disallow the claim nor did it respond with an affirmative challenge. The only thing that is clear is that as of February 13, 1989, the debtor had claimed but not received a tax refund, nor had it received any response or notice of disallowance from the IRS. At that point an adversary claim against the IRS was filed to determine the debtor's tax liability and obtain its refund.

 Although it is unclear what steps the IRS did take following their receipt of the application for adjustment or amended return for 1982, they did not make any determination that the debtor was or was not entitled to a refund within the 90 day or 6 month period. They state in their brief that the NOL calculation was not agreed upon and authorized until late in 1989. It is their position that this prevented the setoff from occurring earlier. The IRS, however, was under a duty to either challenge the claimed NOL adjustment within 6 months of the filing of the Form 1120X or take steps to refund and/or offset it. When it did not do this, it is deemed to have intentionally withheld the funds and effected a setoff upon expiration of the applicable statutory response period.

 Since the right of refund exceeds the adjusting setoff, the debtor is entitled to interest on the net amount to compensate it for the IRS delay in payment. This amount should henceforth be paid over to the debtor, with interest to continue to accrue until such payment is received.

4. Terms of the Agreed Order and Impact Upon Right of Setoff and § 506 Interest

 Both parties present lengthy arguments in their briefs regarding their intent and the proper interpretation of the Agreed Order. Contrary to these arguments, the terms of the Agreed Order do not control this issue. The IRS asserts a right of interest based on § 506(b) which is not referred to or in any way made a part of the Agreed Order. If the court were limited solely to the intended meaning of the parties and the terms of the Order, then the asserted statutory right of interest should be denied. The Agreed Order, however, necessarily operates within the parameters of the Bankruptcy Code and it is the code provisions which govern this dispute. Furthermore, the language of the Order is unambiguous and there is no reason for the court to look beyond its terms and the terms of the Bankruptcy Code to determine or consider the parties' intent. The Order provides for setoff of the IRS claims "as allowed by this court." To implement this provision, the court must look to § 506 and the provisions on the allowance of claims. The Agreed Order was apparently drafted and signed without full consideration of these issues and the parties' later arguments as to their intent only illustrate the need to look at the Bankruptcy Code to determine the applicable law.

*Conclusion:*

The court concludes that the IRS is entitled to setoff the refund amount set out in the agreed order plus the aggregate amount of interest thereon which accrued up to the setoff date against the principal balance of the IRS claim as set out in its proof of claim. The excess of the refund plus interest over this amount is then to be applied under § 506(b) to allow the IRS interest at the statutory rate on its claim interest which accrued post-petition up to the setoff date. The amount of such inter-

4. (Debtor's Reply to United States' Response p. 2, para. 2; First Supplemental Memorandum of

United States p. 7, fn. 7.)

**956**

est which may be allowed is limited to the excess of the refund and accrued interest over the principal balance of the tax liability. The setoff date is the date when the IRS failed to fulfill its statutory duty to respond to the refund request. Under the sparse facts set out in the record, this date would at the very latest have occurred 6 months after the amended tax return was filed in 1986. When this period expired without the IRS either challenging, disallowing or authorizing the claim, it effected the setoff. The exact date can be set by stipulation of the parties or further evidence can be requested as to the exact date in June and the exact action taken by the IRS thereafter. The debtor is then entitled to interest on the net portion of the refund claim after the setoff, if any, and such amounts should be forthwith paid over to the debtor.

*Status:*

This cause is hereby set for a status hearing on October 30, 1990, at 10:30 a.m., at which time the parties shall report whether the debtor and the IRS have agreed as to the setoff date and refund amount to be paid to the debtor in accordance with the guidelines set forth herein. Absent an agreement, a trial date will be set at that time.

### AGREED ORDER

The parties having agreed to the entry of an Order on the following terms, it is hereby ORDERED:

The United States shall pay the debtor the sum of $35,888.98 (the amount by which the principal amount of the debtor's prepetition claim against the United States exceeded the principal amount of the United States' prepetition claim against the debtor, calculated as of March 15, 1985), plus interest from March 15, 1985 on this amount until paid in full, at the rate set forth in 26 U.S.C. § 6621(a)(1), and that $2,080.04 (the amount of the United States' administrative claim against the debtor, calculated as of January 15, 1990) of this amount will be treated as having been paid to the debtor on January 15, 1990.