In re PETTIBONE CORPORATION, et al., Debtors.

PETTIBONE CORPORATION, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 93 C 4626.

United States District Court, N.D. Illinois, E.D.

Nov. 12, 1993.

---

chael Sheehan, Robert D. Kolar & Associates, Chicago, IL, for plaintiff-appellant.

Charles J. Cannon, U.S. Dept. of Justice, Washington, DC, for defendant-appellee.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the Court on a consolidated appeal from a final order of the Bankruptcy Court and a final judgment in a bankruptcy adversary action brought by the debtor, Pettibone Corporation. For the reasons that follow, we affirm the result reached by the Bankruptcy Court.

### BACKGROUND

The debtor, Pettibone Corporation ("Pettibone"), brought this appeal to challenge the propriety of the accounting method used to determine the amount of its liability to the Internal Revenue Service ("IRS"). The issue in this appeal stems from the fact that in certain tax years, Pettibone paid more in taxes than it owed and in certain years it paid less than it owed. Pettibone and the IRS have reached agreement on the amount of tax overpayments and underpayments. The total amount of Pettibone's overpayments over the years was $6,425,156. The total amount of its underpayments was $5,968,352, or $456,804 less than the overpayments. That simple subtraction does not end the inquiry, however. The taxpayer must pay interest on underpayments and under some circumstances, the IRS must pay interest on overpayments. Thus, the principal amounts are increased considerably.

The parties dispute whether the accounting method used by the IRS and approved by the Bankruptcy Court was an allowable method of dealing with these overpayments and underpayments and the resulting interest charges. Specifically, Pettibone challenges the propriety of offsetting the taxes and interest it owed with its overpayments. Pettibone contends that such setoffs were prohibited by its Plan of Reorganization ("the Plan"), the Bankruptcy Judge's Confirmation Order, and the permanent injunction provided by Bankruptcy Code section 524. On the other hand, the IRS contends that its

Steven P. Handler, McDermott, Will & Emery, P.C., Robert D. Kolar, Thomas Mi-

accounting method is the one prescribed by section 6402 of the Internal Revenue Code and is not violative of other laws or provisions. In addition to the offset question, the parties dispute the propriety of the dates selected for the interest calculations. We will consider these issues below.

## LEGAL STANDARD

The United States District Courts have jurisdiction over appeals from final judgments and final orders in bankruptcy cases pursuant to 28 U.S.C. § 158(a). Our review of questions of law is *de novo*. *Federal Deposit Ins. Corp. v. Wooten*, 80 B.R. 917, 919 (N.D.Ill.1987). Thus, there is no presumption of correctness of the Bankruptcy Court's conclusions of law. *Id.*

## DISCUSSION

The Bankruptcy Judge approved the IRS's method of calculating Pettibone's total tax and interest liability. *In re Pettibone Corp.*, 151 B.R. 156, 160 (Bankr.N.D.Ill.1992).[1] The method that was approved was the one used to prepare Exhibit 24A. Pettibone urges that the approval was error. Pettibone states that Exhibit 24A (1) offset overpayments and underpayments against each other and (2) calculated interest based on retroactive setoffs. These contentions form the two issues on appeal.

Exhibit 24A showed Pettibone owing the IRS $2,379,188.84 in taxes and accrued underpayment interest as of February 1, 1986 (the day after its bankruptcy petition was filed). 151 B.R. at 160. Applying interest to that amount, Pettibone owed $4,188,358.37 by June 30, 1992. *Id.* The Bankruptcy Judge found as a fact that the IRS used the following principles to calculate Pettibone's tax liability:

(a) Pettibone's overpayments earned interest from the date of the overpayment to the due date of the liability (underpayment) to which the overpayment was applied. If the overpayment occurred after the due date of the liability to which it was applied, no interest was allowed.

(b) The earliest overpayments were continuously offset against the earliest underpayments.

(c) The interest rate applied to overpayments was as prescribed by 26 U.S.C. §§ 6611 and 6621(a)(1).

(d) The interest rate applied to underpayments was as prescribed by 26 U.S.C. §§ 6601 and 6621(a)(2).

*Id.* at 160.

Pettibone used different principles in calculating its liability. *Id.* at 160. Pettibone kept overpayments and underpayments separate and accrued interest on each. Pettibone did not continuously offset underpayments with overpayments. *Id.* This resulted in Pettibone earning more interest, because this method allowed Pettibone to continuously earn interest, whereas the IRS's method allowed Pettibone to earn interest only during the periods when its overpayments preceded an underpayment liability. Under Pettibone's method, underpayments did not accrue interest after Pettibone filed its bankruptcy petition. Pettibone's Exhibit 17 contained no setoffs and Pettibone's Exhibit 18 set off the underpayments and accrued interest against the overpayments and earned interest as of the date of the confirmation of the Plan. *Id.* Pettibone calculated interest at the same rates as the IRS. *Id.*

The IRS objected to Pettibone's Exhibits 17 and 18 because they did not comply with the interest provisions of Internal Revenue Code sections 6601(f) and 6611(b)(1), which, the IRS argues, prohibit interest from being charged or paid during a period in which a debt is due from the other party. Response Brief at 2. The IRS maintains that these prohibitions apply regardless of when the offset of overpayments with underpayments is performed. *Id.*

Pettibone urges that the amounts reflected in Exhibit 24A incorrectly reflect its liability because, it asserts, Pettibone was entitled to earn interest on the overpayments; the IRS was forbidden from applying its overpayments to underpayment liabilities; and the IRS was prevented from earning interest on the underpayments during the period be-

1. This opinion is published at 151 B.R. 156.

tween Pettibone's declaration of bankruptcy and the Confirmation Order. Pettibone's Opening Brief at 14. Pettibone set forth calculations based on these assertions in Pettibone Exhibit 17, which showed that as of June 30, 1992, Pettibone owed the IRS $16,-892,015 and the IRS owed Pettibone $17,146,-069.

■ Pettibone argued to the Bankruptcy Judge that the IRS's calculation involved the use of setoffs that are prohibited by the Plan and the Confirmation Order. *Id.* at 163. The Bankruptcy Judge examined 11 U.S.C. § 553(a), which provides that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt ..." *Id., citing* 11 U.S.C. § 553(a). The Bankruptcy Judge found that there was no mutual debt in this case, because a taxpayer is not owed a debt from the IRS until the IRS decides whether to credit the amount of overpayment to outstanding tax liabilities. *Id.* at 163, *citing* 26 U.S.C. § 6402(a). The Bankruptcy Judge reasoned that an overpayment therefore does not necessarily create a debt to the taxpayer. *Id.* at 163.

■ We do not agree that the debts were non-mutual. Several cases have held that the right to a tax refund arises at the end of the tax year to which the refund relates. *See, e.g., In re Rozel Indus., Inc.,* 120 B.R. 944, 949 (Bankr.N.D.Ill.1990); *In re Conti,* 50 B.R. 142 (Bankr.E.D.Va.1985). In *Conti,* the court held that "the date of allowance of a tax refund pursuant to I.R.C. § 6407 is not the same as the date the obligation arose for purpose of section 553 of the Bankruptcy Code." *Rozel,* 120 B.R. at 949, *quoting Conti,* 50 B.R. at 148. The court found that "the obligation of the IRS to the debtor arose as of ... the end of the debtor's tax year, subject only to the debtor's filing of a tax return claiming the refund within the time limits prescribed by I.R.C. § 6511(a)." *Id., quoting Conti,* 50 B.R. at 148. The courts in *Rozel* and *Conti* found that a substantive right to a refund arises prior to and irrespective of a taxpayer's compliance with procedural requirements for claiming that refund. Based on the reasoning used in these cases, we find that there was mutuality of debt.

The Bankruptcy Court below reached the opposite conclusion after conducting an analysis of I.R.C. § 6402. Section 6402 provides that in the case of overpayment, the IRS may credit the amount of such overpayment to any tax liability and then shall refund the balance to the taxpayer. 26 U.S.C. § 6402(a). The court stated, "there is no mutuality because the right of Pettibone to receive its overpayments is not in the same right [sic] as the right of the IRS to receive payment of what is due as a result of underpayments. This conclusion is based on the distinction between overpayments and refunds." 151 B.R. at 163. We recognize this refund-overpayment distinction but do not believe it is determinative of the mutuality question.

The very fact that in this litigation, the IRS is attempting to offset its liability to the taxpayer by the amount the taxpayer owes the IRS and the taxpayer is seeking refunds from overpaid taxes tells us that there is mutuality. The cases that find that mutuality is lacking make that determination on the basis either that the parties are not the same or that one of the debts is not pre-petition. Neither of those circumstances is present here. Thus, there are mutual debts. *See In re Rush Hampton Indus., Inc.,* 159 B.R. 343, 347 (Bankr.M.D.Fla.1993).

Although we disagree with the Bankruptcy Judge's conclusion that the debts were non-mutual, this disagreement does not require reversal of the result, for two reasons. First, we are inclined to agree with the IRS that the setting off of tax overpayments with tax underpayments is an accounting method prescribed by the Internal Revenue Code and not the type of "setoff" or "offset" contemplated by the Bankruptcy Code. Secondly, if the IRS did perform "setoffs" within the meaning of the Bankruptcy Code, the setoff of mutual debts is specifically allowed by the Code, 11 U.S.C. § 553, and we do not agree with Pettibone that the Confirmation Order, section 524, or the Plan prohibit such setoffs. The reasoning behind this conclusion is set forth below.

■ As to the Confirmation Order, the Bankruptcy Judge held that the Confirmation Order did not discharge Pettibone's pre-

petition tax liabilities, because the Plan provided that the extent of Pettibone's tax liabilities was still to be determined. 151 B.R. at 165 n. 5. We agree. Thus, the Order's prohibition against offsetting discharged liabilities is not violated by the IRS accounting method.

Our affirmation of the Bankruptcy Judge's conclusion that the Confirmation Order did not discharge Pettibone's pre-petition tax liabilities also disposes of Pettibone's section 524 argument. Section 524 of the Bankruptcy Code provides that a discharge in bankruptcy acts as an injunction against the commencement or continuation of an action to offset a discharged debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(2). Because Pettibone's obligations to the IRS were not discharged, section 524 does not apply. Further, we are inclined to agree with the IRS's argument that it was not exercising a setoff as contemplated by section 524 but rather, was calculating tax liability as prescribed by the Internal Revenue Code. Finally, we note that several courts have held that section 553, which allows setoffs, takes precedence over section 524. *See* cases cited by *In re De Laurentiis Entertainment Group, Inc.,* 963 F.2d 1269, 1276 (9th Cir. 1992), *cert. denied,* ―― U.S. ――, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992). For these reasons, the IRS's accounting method is not precluded by section 524.

Finally, Pettibone argues that the Plan prohibits the accounting method employed by the IRS. Pettibone makes much of the fact that the Plan does not expressly provide the IRS with a right of setoff. Pettibone argues that the IRS is bound by the Plan, citing 11 U.S.C. § 1141, and therefore, cannot exercise a right of setoff. Again, we do not necessarily agree that the IRS's accounting method used a setoff as contemplated by the Plan. Assuming *arguendo* that there was such a setoff, we cannot agree with Pettibone's argument. The same argument was raised and rejected in *De Laurentiis,* 963 F.2d at 1276–77, and *In re Service Decorating Co.,* 105 B.R. 859, 862 (Bankr.N.D.Ill.1989). The Ninth Circuit in *De Laurentiis* stated, "[i]f section 1141 [stating that creditors are bound by the Plan] were to take precedence over section 553 [allowing setoffs], setoffs would be allowed under Chapter 11 only where they were written into a plan of reorganization." *Id.* at 1277. The court found that this interpretation would render section 553 "meaningless," an unacceptable result. *Id.* The court traced the "long and venerable" history of setoffs and noted their important equitable role in bankruptcy proceedings. The court observed that if Congress had intended to depart from the common law by allowing section 1141 to take precedence over section 553, it would have expressed that intent. *Id.* Therefore, the court held that section 553 takes precedence over section 1141. We adopt the reasoning and conclusion of the Ninth Circuit here.

■ Likewise, the Bankruptcy Court in *Service Decorating* resolved the conflict between sections 1141 and 553 by finding that section 553 controls. The court observed, "[t]hus, even after confirmation, [the creditor] could assert as a setoff to a prepetition liability owed to the Debtor a claim that arose prepetition." *Id.* at 862. We are aware that some courts have reached the opposite conclusion, *see, e.g., Matter of Crabtree,* 76 B.R. 208 (Bankr.M.D.Fla.1987), yet find the position of the courts in *De Laurentiis* and *Service Decorating* more persuasive.

Thus, we affirm the result reached by the Bankruptcy Court on the issue of the propriety of setting off overpayments and interest against underpayments and interest.

■ The remaining question on appeal concerns the effective date of the setoffs. Pettibone characterizes the IRS's accounting method as using "retroactive setoffs" because it set off interest on overpayments and underpayments as of February 1, 1986 even though that interest was not assessed until April, 1990. The IRS argues that Pettibone is barred from raising this challenge because of a stipulation entered into by the IRS and Pettibone. That stipulation states as follows:

In the event that the Court rules that the Plaintiff's tax liability to the IRS is to be computed in the manner set forth on Government Exhibit 24A, the computations set forth on Government Exhibit 24A are mathematically accurate and that the lia-

bility of the Plaintiff on January 31, 1986 pursuant to those computations would be $2,379,188.84.

*See* Supplemental Stipulation (R. 335–36). The stated figure represents amounts owed to the IRS and interest thereon. The parties further stipulated that the interest on the stated figure from the effective date of the Plan to June 30, 1992 was $1,171,831.23. The condition precedent, as it were, to the stipulation was that the Bankruptcy Court rule that Pettibone's tax liability was to be computed in the manner set forth on Exhibit 24A. The Bankruptcy Court did so rule. Thus, the stipulation that Pettibone's liability as of January 31, 1986 was $2,379,188.84 came into full existence. Accordingly, Pettibone is bound by the stipulation. We have affirmed the Bankruptcy Court's ruling that Exhibit 24A properly calculated Pettibone's liability. Therefore, Pettibone remains bound by the stipulation.

█ Further, we note that Pettibone was found to owe money to the IRS as of the petition date. Pettibone's own calculations show that the amount of underpayments exceeded the amount of overpayments. Pettibone was not entitled to interest from the IRS on its overpayments when those overpayments did not exceed the liabilities created by its underpayments. Therefore, the IRS accounting method was proper. Accordingly, we will not remand the case.

## CONCLUSION

For the reasons stated above, we affirm the Bankruptcy Court's conclusion that the IRS's offsetting of the taxes and interest Pettibone owed with its overpayments was proper. Further, we affirm the Bankruptcy Court's conclusion that Pettibone was not due any interest during the bankruptcy proceeding for prior overpayments.