### In re FRANKLIN SAVINGS CORPORATION, Debtor.

**Bankruptcy No. 91–41518–11.**

United States Bankruptcy Court, D. Kansas.

Jan. 27, 1995.

R. Pete Smith, McDowell, Rice & Smith, Kansas City, MO, for debtor.

Jaye Rooney, Trial Atty., U.S. Dept. of Justice, Tax Div., for U.S.

*MEMORANDUM OPINION*

JOHN T. FLANNAGAN, Bankruptcy Judge.

The United States, on behalf of its agency, the Internal Revenue Service, moved to abandon part of debtor's federal income tax

refund from the estate and to lift the automatic stay so that the refund could be applied to a liability of the debtor, Franklin Savings Corporation ("Franklin" or "the debtor").[1]

However, before it filed the motions, the IRS had already set off the refund against the debtor's liability.[2] Although the setoff was a violation of the automatic stay, the debtor does not ask for sanctions against the IRS; rather, it contests the IRS's right to setoff under § 553. Therefore, the Court will not address the stay violation. *In re Rozel Industries, Inc.*, 120 B.R. 944, 948 (Bankr.N.D.Ill.1990) (noting that where there was no request for sanctions for violating the automatic stay by exercising the right of setoff, the court would not address the issue).

The ultimate question for decision under § 553 is whether the IRS has the right to set off a tax refund it owes to the debtor against a claim that the debtor owes to it for an excessive payment of an earlier refund.

Franklin is the parent of a corporate group. As the parent of a corporate group, Franklin filed a consolidated federal income tax return for its affiliates following the close of each fiscal year on June 30. For the 1990 tax year, the consolidated return reflected a net operating loss which entitled Franklin to abatement of prior years' taxes under the Internal Revenue Code's carryback rules. Consequently, on May 10, 1991, the IRS paid Franklin an income tax refund of $8,274,939.35. Because the IRS miscalculated, however, debtor received $45,476.63 more than it should have.

Notwithstanding the large refund, the debtor filed a Chapter 11 bankruptcy petition on July 26, 1991. The IRS did not file a proof of claim in the case, but the parties concede that this does not prevent setoff. *In*

re *G.S. Omni Corp.*, 835 F.2d 1317, 1318 (10th Cir.1987) (noting that a creditor cannot set off a claim that has been disallowed and that failure to file a claim, while it results in the claim not being allowed, does not result in the claim being "disallowed" under § 502(b) and § 553(a)(1)).

After the bankruptcy filing, debtor's finances continued to deteriorate, and on March 16, 1992, when it filed its income tax return for the fiscal year ending June 30, 1991, it reported another operating loss of $904,214.00 and requested a second refund. Apparently, while considering this request, the IRS discovered that it had paid $45,476.63 too much when it made the refund on May 10, 1991.

The IRS notified debtor's attorney, R. Pete Smith, by letter dated April 27, 1992, that "[o]n May 10, 1991, a refund in the amount of $8,274,939.35 was forwarded to the debtor for its 1988 income tax return. This amount included an erroneous refund of $53,257.96 in interest, and as a result, there is currently a balance due on this tax period."[3] (Exhibit B to debtor's Suggestions In Opposition to the Motions of the I.R.S. for Relief from the Automatic Stay and for an Order of Abandonment filed October 30, 1992.) The letter went on to propose that debtor agree to an IRS setoff of the $904,214.00 refund and enclosed a proposed "Joint Application to Lift the Stay" for Mr. Smith's approval to permit the IRS to effect the setoff.

Mr. Smith replied to the IRS by letter on May 11, 1992, stating that he would consult with his client about the setoff proposal and suggesting that the IRS consider "amending the Joint Application to Lift Stay to provide that the balance of the tax refund which is not the subject of the IRS 'set off' will be

1. The debtor appears by its attorney, R. Pete Smith of McDowell, Rice & Smith, Kansas City, Missouri. The United States, on behalf of the Internal Revenue Service, appears by Jaye Rooney, Trial Attorney, United States Department of Justice, Washington, D.C.

2. The Court finds that this proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan.Rule 705).

3. Although the letter referred to the erroneous interest payment in the amount of $53,257.96, the Certificate of Assessments and Payments attached to the IRS brief shows a $7,781.33 adjustment that brought the final liability figure to $45,476.63. (Government Exhibit 1 attached to United States' Brief in Response to Debtor's Opposition to Motions for Relief from Stay and Application for Abandonment filed November 16, 1992, at 3.)

paid directly to Franklin Savings Corporation forthwith." (Exhibit C to debtor's Suggestions In Opposition to the Motions of the I.R.S. for Relief from the Automatic Stay and for an Order of Abandonment filed October 30, 1992.) Ultimately, on May 12, 1992, the IRS sent the debtor a refund check for $858,737.37, the requested amount of $904,214.00 minus $45,476.63. Upon receipt of the refund check, Mr. Smith wrote to the IRS on May 26, 1992, acknowledging receipt of the refund check and asking whether the $45,476.63 had been deducted from the refund. The IRS did not respond to the letter. Instead, on October 5, 1992, it filed its motions for stay relief and abandonment, seeking validation of its right to setoff against the 1991 refund after the fact.

In its letter to Mr. Smith and in its brief, the IRS characterizes the erroneous refund as interest. Although Mr. Smith asked the IRS for clarification of the payment error, he has not taken issue with the IRS's characterization of the payment. Rather, he has contended on behalf of the debtor that the payment was "interest," not a "tax" payment that the IRS could offset under § 6402 of the Internal Revenue Code. Since the pleadings do not suggest a fact issue on the nature of the repayment, the Court will view the erroneous payment as occasioned by the IRS's faulty interest computation and will consider the money paid by the IRS as, in fact, interest.

■ The debtor's brief presents a summary of the elements that must be established for the right of setoff to come within § 553. The debtor took these elements from *In re Academy Answering Services, Inc.,* 90 B.R. 294, 296 (Bankr.N.D.Ohio 1988), *rev'd on other grounds,* 100 B.R. 327 (N.D.Ohio 1989), in which the court stated:

The Sixth Circuit Court of Appeals considered a setoff issue in *In re Southern Industrial Banking Corp.,* 809 F.2d 329 (6th Cir.1987). In that decision, the Court of Appeals stated, "The application of setoff, however, is permissive and lies within the equitable discretion of the trial court." *Id.* at 332. Initially, the creditor moving for setoff must show that a right to setoff exists by establishing the following:

1. A debt owed by the creditor to the debtor which arose prior to the commencement of the bankruptcy case;

2. A claim of the creditor against the debtor which arose prior to the commencement of the bankruptcy case;

3. The debt and claim are mutual obligations; and

4. A right to setoff the debts under nonbankruptcy law.

■ The first element requires that the creditor show that the debt it owes arose prepetition. To do so, the IRS contends that "[t]he right to a tax refund arises at the end of the taxable year to which the refund relates." (United States' Brief in Response to Debtor's Opposition to Motions for Relief from Stay and Application for Abandonment filed November 16, 1992, at 4.) Franklin, on the other hand, claims that the refund debt owed by the IRS is a postpetition debt because the return claiming the refund was filed postpetition.

To support its position, the IRS cites: *Matter of Johnson,* 136 B.R. 306, 309 (Bankr. M.D.Ga.1991) (stating that courts generally have held that the substantive right to a tax refund arises at the end of the tax year to which the refund relates); *In re Runnels,* 134 B.R. 562, 564 (Bankr.E.D.Tex.1991) (accepting the IRS's explanation that "on December 31, 1989, all of the events necessary to establish Debtors' tax liability, vel non have already occurred. At that point, Debtors' tax liability, vel non for 1989 was fixed albeit unliquidated."); *In re Rozel Industries, Inc.,* 120 B.R. 944, 949 (Bankr.N.D.Ill. 1990) (holding that the right to a tax refund arises at the end of the tax year to which the refund relates and that it is irrelevant that the tax return or independent assessment by the IRS occurs later or that the amount of the item is not specifically known or currently due). These cases clearly support the position of the IRS; therefore, I conclude that the refund obligation arose prepetition.

The second element of proof required concerns the prepetition character of the creditor's claim against the debtor. The IRS's claim against the debtor arose on May 10, 1991, when it paid the $8,274,939.35 which

included the extra $45,476.63. The parties do not dispute that this liability arose prepetition, i.e., before commencement of the case on July 26, 1991.

Likewise, the parties do not dispute the third element of proof—that the claim and the debt are mutual obligations. Both debts arose from the same pattern of legal relationship. Each party has possession of money that clearly belongs to the other party. A mutual debtor/creditor relationship runs between the parties to the two transactions. *In re Rozel Industries, Inc.,* 120 B.R. 944, 949 (Bankr.N.D.Ill.1990) (stating that the claim of the IRS for taxes and the refund owed to the debtor are mutual debts since the parties and relationships are the same in each claim—tax collector and taxpayer); *In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990) (citing cases holding that setoff is a common law doctrine recognized in bankruptcy and that claims between the same parties in the same capacity, otherwise valid and enforceable, are mutual and subject to setoff).

The final element of proof requires that the IRS have a right under nonbankruptcy law to set off the debts. To show this nonbankruptcy right, the IRS relies on § 6402(a) of the Internal Revenue Code:[4]

(a) **General Rule.**—In the case of *any overpayment,* the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against *any liability in respect of an internal revenue tax on the part of the person who made the overpayment* and shall, subject to subsections (c) and (d), refund any balance to such person. (Emphasis added.)

The United States Supreme Court has defined the word "overpayment" in this statute as follows:

[W]e read the word "overpayment" in its usual sense, as meaning any payment in excess of that which is properly due. Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. And the error may be committed by the taxpayer or by the revenue agents. Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

*In re Jones v. Liberty Glass Co.,* 332 U.S. 524, 531, 68 S.Ct. 229, 233, 92 L.Ed. 142 (1947).

Other courts have applied this statute to justify setting off an overpayment against a tax liability. *In re Rozel Industries, Inc.,* 120 B.R. 944, 948 (Bankr.N.D.Ill.1990) (applying § 6402 of the Internal Revenue Code as authorizing setoff of a tax overpayment against a tax liability); *In re Academy Answering Services, Inc.,* 90 B.R. 294 (Bankr. N.D.Ohio 1988) (using § 6402(a) as nonbankruptcy law justifying the setoff of a tax refund); *In re Runnels,* 134 B.R. 562, 564 (Bankr.E.D.Tex.1991) (finding that the IRS had a valid statutory right to set off debtor's 1989 tax refund against its 1984 tax liability pursuant to 26 U.S.C. § 6402(a) notwithstanding the bankruptcy petition); *Matter of Johnson,* 136 B.R. 306, 308 (Bankr.M.D.Ga. 1991) (recognizing that 26 U.S.C. § 6402(a) provides the right for setoff under 11 U.S.C. § 553).

Nevertheless, the debtor argues that since the transaction giving rise to its liability was an erroneous "interest" payment, the statute cannot operate. Debtor says this because the statute uses the words "liability in respect of an internal revenue tax" while the erroneous payment creating the debtor's liability in this case was not for an internal revenue "tax," but rather was a liability for erroneously paid "interest."

■ The statute does apply in this case. Under the statute, Franklin paid taxes from 1988 through 1990 entitling it to a refund in 1991 for tax year 1990 and preceding years when the loss carryback was applied. The loss carryback created an "overpayment" for tax years before 1991, and the taxpayer/debtor was the person who made the overpayment.

To correct this overpayment, on May 10, 1991, the IRS made an erroneous tax refund to the taxpayer, giving rise to a "liability in respect of an internal revenue tax on the part

---

4. Title 26, United States Code.

of the person who made the overpayment." 26 U.S.C. 6402(a).

In tax year 1991, a second "overpayment" arose because of a second operating loss. Franklin was the person who made this overpayment as well. Under the statute, the Secretary "may credit the amount of such overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." The phrase "any liability in respect of an internal revenue tax" is broad enough to include debtor's liability to restore an erroneous payment of interest calculated on a federal income tax refund to a taxpayer. If this were not the case, the IRS could only recoup the erroneous payment by filing suit in district court under 26 U.S.C. § 7405, as the debtor suggests must be done. The inefficiency of such a result would be contrary to the concepts of setoff and recoupment. They are doctrines designed to avoid a multiplicity of suits in the interest of fair, just and speeding resolution of disputes. *In re Davidovich,* 901 F.2d 1533, 1537 (10th Cir.1990) (discussing the doctrine of recoupment as an equity rule of joinder that permitted adjudication in one suit of two claims, both arising out of the same transaction); *In re G.S. Omni Corp.,* 835 F.2d 1317, 1318 (10th Cir.1987) (stating that the right to setoff is universally recognized as grounded in fairness, citing 4 *Collier on Bankruptcy* ¶ 553.02 (15th ed. 1986)).

The Court holds that § 6402(a) gives the IRS a right under nonbankruptcy law to set off the refund against the debtor's liability to it.

Finally, debtor contends that an insufficiency exists by reason of the setoff; hence, under § 553(b), to the extent there is such an insufficiency, the setoff is defeated. Putting aside the question of insufficiency, the Court notes that in order for § 533(b) to apply, the setoff must occur prepetition. In this case, the setoff, which was made on May 12, 1992, occurred postpetition—when the IRS sent the debtor a refund check for $858,737.37, after deducting $45,476.63 from the requested refund amount of $904,214.00. Since the Chapter 11 bankruptcy petition had been filed on July 26, 1991, this transaction clearly occurred postpetition; consequently, § 553(b) does not apply in this case.

The creditor has satisfied all of the requirements for a valid setoff against the debtor's liability. Accordingly, the motions of the IRS for abandonment and relief from the automatic stay are sustained as to the erroneous $45,476.63 payment made to the debtor by the IRS on May 12, 1992.

The foregoing discussion shall constitute the findings of fact and conclusions of law required under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.