**Gail I. HANKERSON**

v.

**UNITED STATES DEPARTMENT OF EDUCATION.**

**Civ. A. No. 91–7775.**

United States District Court, E.D. Pennsylvania.

March 13, 1992.

474

Alan White, Community Legal Services, Inc., Philadelphia, Pa., for Gail Hankerson.

Virginia R. Powel, U.S. Atty's Office, Philadelphia, Pa., Ronald B. Sann, U.S. Dept. of Educ., Washington, D.C., for U.S. Dept. of Educ.

Virginia R. Powel, Pamela Karr Harrison, I.R.S., Office of Dist. Counsel, Philadelphia, Pa., for I.R.S.

Charles Coyne, pro se.

Frederic Baker, pro se.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

The United States Department of Education ("Education") appeals from the Bankruptcy Court's Order granting monetary relief to plaintiff, Gail I. Hankerson ("Hankerson"), and against Education. For the following reasons, the Order of the Bankruptcy Court shall be REVERSED and VACATED, and the case shall be DISMISSED.

## FACTUAL BACKGROUND

Hankerson applied for a Guaranteed Student Loan (GSL) through Germantown Savings Bank in December, 1972. A promissory note for a student loan in the amount of $1,500.00 with a simple interest rate of 7% per year was executed on or about December 6, 1972 by Hankerson. The note was guaranteed by the Pennsylvania Higher Education Assistance Agency ("PHEAA") and reinsured by Education under the Guaranteed Student Loan Program. Education also paid interest and special allowance benefits on this loan in accordance with the reinsurance agreement.

Hankerson made no payments to the Germantown Savings Bank (the "Bank") and the loan was placed in default status on June 18, 1974. The Bank filed a claim against the guarantee with PHEAA and, subsequently, PHEAA paid $1,517.50 to the Bank. PHEAA thereafter filed an insurance claim against Education and recovered $1,200 from Education. Subsequently, PHEAA obtained a judgment against Hankerson for $2,278.72 in the Court of Common Pleas for Dauphin County.

In September of 1990, PHEAA assigned the Hankerson loan to Education for the purposes of Federal Income Tax refund offset. Hankerson filed a Federal Tax return on March 11, 1991 claiming a refund of withholding taxes for the tax year 1990 in the amount of $939 and also an earned income credit of $953. On March 11, 1991, at the direction of Education, the Internal Revenue Service ("IRS") offset Hankerson's 1990 Federal Income Tax refund. This amount was retained by the federal government and applied toward Hankerson's defaulted loan.

Hankerson filed a petition for bankruptcy relief pursuant to Chapter 7 of the Bankruptcy Code on April 25, 1991. Hankerson claimed the refund and earned income credit as exempt property, and no objection was filed within the allowed time period. On July 11, 1991, David A. Scholl, United States Bankruptcy Judge, approved a stipulation between the debtor and PHEAA providing that Hankerson's student loan debt would be discharged pursu-

ant to 11 U.S.C. § 523(a)(8) since it was more than seven (7) years old. Prior to the entry of discharge and closing of the case, Hankerson filed an adversary proceeding against Education to recover a refund of withholding taxes in the amount of $953 that was due to her for the 1990 tax year, but which had been intercepted 44 days before the bankruptcy filing.

Hankerson asserted that the setoff of her tax refund and earned income credit was recoverable pursuant to 11 U.S.C. § 553 which permits the recovery by the trustee or by the debtor of certain payments withheld on the basis of a setoff right within 90 prior to the bankruptcy. No proof of claim was filed on behalf of the United States Department of Education in this matter. The parties filed cross motions for summary judgment. Judge Scholl found for Hankerson and the Department of Education appealed.

### DISCUSSION

The Department of Education is an agency of the United States. As such it enjoys sovereign immunity from suit unless the United States has expressly waived such immunity. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969)). The doctrine prohibits all suits against the United States except in those limited instances in which the United States has enacted a statute consenting to suit. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Such waivers are narrowly construed. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

The Supreme Court has "traditionally held that the Government's consent to be sued 'cannot be implied but must be unequivocally expressed.'" *Mitchell,* 445 U.S. at 538, 100 S.Ct. at 1351. Thus, the Court has emphasized that "we must construe waivers strictly in favor of the sovereign ... and not enlarge the waiver 'beyond what the language requires.'" *Library of Congress v. Shaw,* 478 U.S. 310,

318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986) (citations omitted); *see also United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Moreover, the Court has observed that a waiver of sovereign immunity is a jurisdictional prerequisite to actions against the United States, *Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580. A Bankruptcy Court's conclusions of law are reviewed *de novo. Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988).

A limited waiver of sovereign immunity for bankruptcy matters is contained in 11 U.S.C. § 106 which states:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

In this case, Hankerson seeks monetary recovery against the United States for a setoff pursuant to 11 U.S.C. § 553(b). That section states in relevant part:

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), (365)(h)(2), or (365)(i)(2) of this title, if a *creditor* offsets a mutual debt owing to a debtor against a claim against a debtor on or within 90 days before the date of the filing petition, the trustee may recover from such creditor the amount so offset

to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the latter of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

11 U.S.C. § 553(b) (emphasis added).

Although it is uncontested that subsection 106(c) applies to cases brought pursuant to § 553(b), the scope of that application is at issue. The plaintiff argues that subsection 106(c) expressly waives sovereign immunity for suit brought pursuant to § 553(b) since that section contains the term "creditor." The government contends that subsection 106(c) does not permit money judgments against the United States, but merely permits declaratory and injunctive actions. Judge Scholl found for the plaintiff concluding that "Controlling case law ... appears to direct the conclusion that federal agencies are not immunized from such relief." *In re Hankerson,* 133 B.R. 711, 722 (Bankr.E.D.Pa.1991).

The government argued that a contrary ruling is required under the holding of the Supreme Court in *Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In that case the Supreme Court determined that § 106 did not abrogate the Eleventh Amendment's limitation on the jurisdiction of Federal Courts in suits against a State. A plurality Supreme Court opined that:

[The] language of § 106(c)(2) is more indicative of *declaratory and injunctive* relief than of monetary recovery. The clause echoes the wording of sections of the Code such as § 505, which provides that "the court may determine the amount or legality of any tax," 11 U.S.C. § 505(a)(1), *a determination of an issue that obviously should bind the governmental unit but that does not require a monetary recovery from the States.* Under this construction of § 106(c), a State that files no proof of claim would be bound, like other creditors, by dis-

charge of debts in bankruptcy, including unpaid taxes, see *Neavear v. Schweiker,* 674 F.2d 1201, 1204 (7th Cir.1982); cf. *Gwilliam v. United States,* 519 F.2d 407, 410 (9th Cir.1975), but would not be subjected to monetary recovery.

*Hoffman,* 109 S.Ct. at 2823 (emphasis added). Thus, the plurality found that § 106(c) does not authorize monetary damages against the States, but only allows for declaratory and injunctive relief, binding governmental units only to injunctive and declaratory rulings.

Judge Scholl also looked to two appellate decisions, *In re Pearson,* 917 F.2d 1215 (9th Cir.1990), and *Small Business Administration v. Rinehart,* 887 F.2d 165 (8th Cir.1989). Both of these cases interpret *Hoffman.* In *Pearson,* the Ninth Circuit stated that *Hoffman* "held that section 106(c) only waives sovereign immunity for purposes of injunctive and declaratory relief; it does not waive immunity from suit for money damages." 917 F.2d at 1216. The Ninth Circuit concluded that sovereign immunity has not been waived for monetary judgments pursuant to § 362(h), since that section does not include any of the three "trigger" words specified in § 106(c).

In *Rinehart,* the Eighth Circuit determined that punitive damages for setting off debts in violation of the automatic stay could not be assessed against the Small Business Administration, a federal agency, since sovereign immunity had not been waived for such damages. The Court found that:

While the precise question in *Hoffman* was the extent to which the states' eleventh amendment immunity had been abrogated under section 106(c), the Court's opinion refers to the federal government as well, and its analysis is equally applicable to a waiver of sovereign immunity by the federal government.

Because the Court has interpreted section 106(c) so as not to waive the government's sovereign immunity with respect to monetary awards, we have no alterna-

tive but to reverse the district court's punitive damages award in this case. *Rinehart,* 887 F.2d at 170.

Judge Scholl found that the holding of the Ninth Circuit in *Pearson* was limited solely to cases involving section 362(h), and conceded that he was at a loss to explain *Rinehart.* He observed "There is little we can say about the reasoning of the *Rinehart* court except to indicate that we believe that it totally misreads the references to the application of § 106(c) to the federal government which are contained in the plurality." 133 B.R. at 721.

Recently, the Supreme Court resolved the issue in *United States v. Nordic Village, Inc.,* — U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). On certiorari to the Supreme Court, the Government again argued the applicability of *Hoffman.* The Court rejected this argument. Justice Antonin Scalia, writing for the majority, stated:

> Contrary to the Government's suggestion, *Hoffman* does not control today's decision. It is true, to be sure, that Congress made clear in § 106 that (insofar as is within Congress's power) State and Federal Sovereigns are to be treated the same for immunity purposes. *See,* 11 U.S.C. § 101(27) (1982 ed. Supp. II) ("'government unit' means United States [and] State"). Since, however, the Court in *Hoffman* was evenly divided over what that treatment was as to the States; and since the vote of the concurrence, denying amenability to suit, rested upon a ground (the Eleventh Amendment) applicable only to the States and not to the Federal Government, *see, FHA v. Burr,* 309 U.S. 242, 244 [60 S.Ct. 488, 490, 84 L.Ed. 724] (1940); the holding in *Hoffman* has no binding force here. The separate opinions dealing with the statutory question are relevant, however, and we shall in fact rely on the reasoning of the plurality.

112 S.Ct. at 1014.

The Court examined the language of § 106(c) and noted that "Under one interpretation, § 106(c) permits the bankruptcy court to issue 'declarative and injunctive'— though not monetary—relief against the Government." *Id.* at 1015 (citing *Hoffman,* 492 U.S. at 102, 109 S.Ct. at 2823). The Court explained:

> This conclusion is reached by reading the two paragraphs of subsection (c) as complementary rather than independent: the first paragraph identifies the subject matter of disputes that courts may entertain under the subsection and the second paragraph describes the relief that courts may grant in such disputes. That is to say, the second paragraph specifies the manner in which there shall be applied to governmental units the provisions recognized in the first paragraph, i.e., a manner that permits declaratory or injunctive relief but not an affirmative monetary recovery.

*Id.* Although the Court notes that "Several factors favor this construction," *id.,* the Court also suggests that this construction is not the only possible interpretation of § 106(c).

> If the two paragraphs of § 106(c) are read as being independent, rather than the second as limiting the first, then, pursuant to the first paragraph, Code provisions using the triggering words enumerated in paragraph (c)(1) would apply fully to governmental units. But the application of those provisions would be limited to the requirements of subsection (c) ("except as provided in subsections (a) and (b) of this subsection").

*Id.* at 1016.

The Court reasoned that the susceptibility of subsection 106(c) to multiple interpretations precludes a waiver of sovereign immunity since such a waiver must be explicitly stated in the statute. The Court noted, "The foregoing are assuredly not the only readings of subsection (c), but they are plausible ones—which is enough to establish that a reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted." *Id.* Moreover, legislative history could be of no assistance in resolving the ambiguity since "the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in

statutory text. If clarity does not exist there, it cannot be supplied by a committee report." *Id.*

In conclusion, the Court found that "Neither § 106(c) nor any other provision of law establishes an unequivocal textual waiver of the Government's immunity from a bankruptcy trustee's claims for monetary relief." *Id.* at 1017. The Court, therefore, held that "Congress has not empowered a bankruptcy court to order a recovery of money from the United States...." *Id.* Accordingly, this Court finds the doctrine of sovereign immunity prohibits the Bankruptcy Court from awarding monetary relief against the Department of Education. The debtor may not recover the amount collected by tax refund offset because the claim is barred by sovereign immunity.

An appropriate Order follows.

## FINAL JUDGMENT

AND NOW, this 12th day of March, 1992, upon consideration of the Appeal of the United States Department of Education from the Order of David A. Scholl, United States Bankruptcy Judge for the Eastern District of Pennsylvania dated November 12, 1991, IT IS HEREBY ORDERED that said Order is REVERSED and VACATED.

IT IS FURTHER ORDERED that this action is DISMISSED WITH PREJUDICE.