**In re Roy A. GLENN, Debtor.**

**Bankruptcy No. 96–10258DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

July 10, 1996.

Michael A. Cataldo, Cibik & Cataldo, Philadelphia, PA, for Debtor.

Thomas A. Rath, IRS District Counsel, Mid–Atlantic Region, Philadelphia, PA, for IRS.

Shannon L. Hough, Washington, DC, for IRS.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

## A. INTRODUCTION

The instant dispute between ROY A. GLENN ("the Debtor") and the Internal Revenue Service ("the IRS") involves the right of the IRS to set off a $2,327 1995 federal income tax refund ("the Refund") for a tax year which ended prior to the Debtor's Chapter 13 filing on January 12, 1996, but for which the return was neither due nor filed at the time that the Debtor's bankruptcy case had commenced. This dispute can be resolved only by determining whether the Refund was a postpetition obligation of the IRS to the Debtor which could not be set off pursuant to 11 U.S.C. § 553(a), or a prepetition obligation which could be so set off. Despite considerable authority to the contrary, we will adhere to our ruling in *In re Hankerson*, 133 B.R. 711, 716–17 (Bankr. E.D.Pa.1991), *rev'd on other grounds sub nom. Hankerson v. United States Dep't of Education*, 138 B.R. 473 (E.D.Pa.1992), that such a refund, if timely requested and allowed postpetition, arose post-petition. Consequently, we will order the IRS to remit the Refund to the Debtor.

## B. FACTUAL AND PROCEDURAL HISTORY

On June 12, 1996, this court filed a Memorandum ("the Memo"), presently reported only at 1996 WL 332405, setting forth the pertinent facts established and the procedural history of the dispute to that date. Rather than reiterate all that was set forth in the Memo, we will attach same as Appendix "A" and proceed forward therefrom. In the Memo, we concluded that the IRS's effectively permanent retention of the Refund without first securing or obtaining relief from the automatic stay was not a permissible temporary "freeze" of the Refund within the scope of *Citizens Bank of Maryland v. Strumpf,* —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), but, rather, that the dispute was controlled by the principles of *United States v. Norton,* 717 F.2d 767 (3d Cir.1983). Under these principles, we allowed the IRS to retain the refund only if it filed a motion to obtain relief from the automatic stay to set off the refund on or before June 19, 1996, and established, at a hearing on any such motion scheduled on June 27, 1996, that it would not be adequately protected in its rights to the Refund at that hearing.

By this order, we made clear our belief that the IRS would have to properly establish its right to the Refund to effect such a permanent "freeze" against it. We also hoped that the parties would perceive the weaknesses in each of their respective positions and amicably resolve this dispute. The IRS did timely file the motion for relief from the stay and, although the parties reported, at the June 27, 1996, hearing, that they had attempted to resolve the dispute, they also reported that they had been unsuccessful in these efforts.

The Debtor was briefly called at the hearing and testified that he had filed his 1995 income tax return very early, on or about January 22, 1996, as part of an application to obtain a refund anticipation loan. He was informed by the lender that the IRS had approved the Refund but had refused to remit it to him because of his outstanding prepetition delinquency to the IRS in late February 1996, or early March 1996, whereupon his loan application was denied. The Debtor also conceded that his Chapter 13 plan, even if confirmed at the first listed confirmation hearing on September 3, 1996, contemplated payment of only the secured ($4,170) and priority ($2,200) portions of the IRS's claim. Therefore, the plan did not purport to repay the sizable general unsecured portion of the IRS's claim ($19,373.36), and that portion was hence "unprotected."

The bottom line of the discussion was that both parties agreed that, given this court's interpretation of *Strumpf* and *Norton,* as expressed in the Memo, the resolution of this dispute turned on whether this court would continue to follow its reasoning regarding the

date of accrual of a federal tax refund in *Hankerson* or would bow to the emerging contrary majority. This court was therefore obliged to carefully review its reasoning in *Hankerson,* and that of the contrary authorities.

## C. DISCUSSION: THIS COURT ADHERES TO HANKERSON AND CONCLUDES THAT THE INSTANT REFUND IS A POSTPETITION OBLIGATION NOT SUBJECT TO SETOFF

In *Hankerson* we relied principally on the language of 26 U.S.C. § 6407, an Internal Revenue Code ("IRC") section bearing the title of what we believed to be the matter at issue, *i.e.,* the "Date of allowance of refund or credit." That IRC section provides as follows:

> The date on which the Secretary first authorizes the scheduling of an overassessment in respect of any internal revenue tax shall be considered as the date of allowance of refund or credit in respect of such tax.

This IRC section establishes the date when the overassessment is "authorized," *i.e.,* finally determined to be due, as the date of "allowance" of the refund. This statute appeared to us then, and still appears now, to decide the critical question of when a tax refund is deemed allowed in and of itself.

As further support for the conclusion that the date that a refund is authorized is the date of its allowance, we also stated in *Hankerson,* 133 B.R. at 716, as follows:

> As Judge Markovitz correctly pointed out in [*In re Harbaugh,* 99 B.R. 671 (Bankr. W.D.Pa.) ("*Harbaugh I*"), rev'd, 1989 WL 139254, (W.D.Pa. Oct. 13, 1989) ("*Harbaugh II*"), aff'd, 902 F.2d 1560 (3d Cir. 1990),] the IRS can not determine the existence of a tax overpayment until a return has been filed, mainly because a refund is dependent on many factors beyond the knowledge of the IRS on the last day of the tax year, *e.g.,* the amount of wages withheld during the tax year and the existence of any creditors or exemptions and income from other sources. *Id.* [at 676]. Much of this information is not available to

the taxpayer or the IRS until after the close of the tax year. Additionally, taxes withheld at the source during the tax year are not deemed paid until the date that the taxpayer's return is due. 26 U.S.C. § 6513. To hold that a refund arises on the last day of the taxable year is contrary to these provisions of the ... IRC ... and is impractical in terms of the actual determination of the refund.

We also noted later in *Hankerson, id.* at 716–17, that the establishment of a date later than the end of the tax year as the date that refund should be deemed to be allowed is suggested by 26 U.S.C. § 6611(b), which provides that interest on a refund does not accrue until a return is filed. Having chosen a later date than the end of the tax year for the purpose of when its own liability for interest accrues, it seems only fair for the IRS to accept this date as the date that a refund is allowed for all purposes.

We have carefully considered the cases which reject the analysis of *Harbaugh I* and *Hankerson.* We note that, in addition to those cited in the Memo, these cases include *In re Franklin Savings Corp.,* 177 B.R. 356, 358 (Bankr.D.Kan.1995); *In re Whitaker,* 173 B.R. 359, 361 (Bankr.S.D.Ohio 1994); *In re Martin,* 167 B.R. 609, 613 (Bankr.D.Or.1994); *In re Thorvund–Statland,* 158 B.R. 837, 838–39 (Bankr.D.Idaho 1993); *In re Eggemeyer,* 75 B.R. 20, 21–22 (Bankr.S.D.Ill.1987); and *In re W.L. Jackson Mfg. Co.,* 50 B.R. 506, 508 (Bankr.E.D.Tenn.1985).

We initially observe that many of these cases provide no analysis and appear to assume, like *Martin, supra,* 167 B.R. at 613, that all published consumer cases reach this conclusion. Others, like *Thorvund–Statland, supra,* which consider the matter in issue "not easily discernable," 158 B.R. at 839, rely on principally two arguments: (1) a contrary result would allow a debtor to manipulate the IRS's right to a setoff by choosing an "advantageous" post-petition date for the filing of a return. *See Harbaugh II,* 1989 WL 139254, at *2; *Thorvund–Statland, supra,* 158 B.R. at 839; and *In re Conti,* 50 B.R. 142, 148 (Bankr.E.D.Va.1985); and (2) their result is consistent with the Supreme Court's decision in *Segal v. Rochelle,* 382 U.S. 375,

378–81, 86 S.Ct. 511, 514–16, 15 L.Ed.2d 428 (1966), a case arising under the predecessor Bankruptcy Act and holding that "loss-carry-back refunds" received for the tax year in which a bankruptcy was filed, but carried back to pre-petition tax years, can be claimed by a bankruptcy trustee. *See Harbaugh II, supra,* at *2, *3; *Martin, supra,* 167 B.R. at 613; *In re Rozel Industries, Inc.,* 120 B.R. 944, 950 (Bankr.N.D.Ill.1990); and *Jackson Mfg., supra,* 50 B.R. at 508.

Both of these arguments could be neutralized by adding caveats to the *Hankerson* result that, in order to take advantage of a contention that a refund is payable postpetition, a debtor-taxpayer must file a tax return in a timely manner and is limited to recovery of a refund for only the tax year for which the return is filed. This limitation would prevent a debtor from rendering a refund postpetition by filing an untimely return. It would also preclude any attempts to assert rights to "loss-carryback refunds" attributable to earlier tax years.

However, we must observe that a debtor properly retains control over the impact of the timing of a bankruptcy filing. The debtor is as responsible for choosing whether to file a bankruptcy case before the end of the tax year or not, as the debtor is responsible for choosing when to file a tax return. For instance, in the instant factual circumstances, the Debtor could have filed this case in December 1995 instead of on January 12, 1996, and presumably no question would have arisen regarding the postpetition nature of the setoff. In this circumstance, the inability of the IRS to set the Refund off against the Debtor's prepetition indebtedness to it would have been clear. *See In re Warden,* 36 B.R. 968, 970–73 (Bankr.D.Utah 1984); and *In re Hammett,* 21 B.R. 923 (Bankr.E.D.Pa.1982). Requiring the debtor to file a timely return will establish a "bright-line test" as to when the debtor must act, which is as easy to apply as requiring an allowance to be measured by the end of the tax year, the date chosen by the *Rozel Industries* court. 120 B.R. at 951. The date of allowance thereafter is within the control of, and readily ascertainable by, the IRS. In addition, marking the authorization date as the date of allowance of a return will promulgate a rule which, as the *Rozel Industries* court recognized, *id.,* is consistent with 26 U.S.C. §§ 6407, 6513(a), and 6611(b).

This court perceives a clear distinction between a debtor who seeks to retain a refund from a timely-filed postpetition federal tax return for that particular tax year and the *Segal* debtors, who were attempting to recoup pre-petition tax credits through postpetition tax filings, and then to retain those credits arising from the prepetition filings. It seems clear that the *Segal* debtors' legal and equitable interests in prepetition claims would constitute property of the estate which would pass to the trustee under 11 U.S.C. § 541(a)(1) of the Bankruptcy Code. Therefore, the result in *Segal* is dictated by the terms of the Code and that decision is not inconsistent with our instant decision.[1]

In sum, we find the arguments urging a result contrary to that reached by us in *Hankerson* to be unconvincing. We therefore reaffirm the conclusion reached in that case that the date that a tax return is authorized, rather than the conclusion of the tax year for which it is filed, constitutes the date that a federal income tax return is deemed to be allowed. On the basis of this conclusion, in the context of this case, we hold that the IRS is impermissibly seeking to set off its postpetition indebtedness to the Debtor against his prior tax-related obligations to it. Consequently, we will deny the IRS's motion seeking relief from the automatic stay to effect the setoff in issue, and we will grant the Debtor's motion insofar as it seeks to recover the Refund. The Debtor is not entitled to any other relief, including additional damages, because the IRS has corrected any stay violation, no additional damages were proven, and 11 U.S.C. § 106(a)(3) prohibits any award of punitive damages.[2]

---

1. Nor is this court flaunting *stare decisis* principles for declining to follow *Harbaugh II* despite its summary affirmance by the Third Circuit Court of Appeals. It is only a reported opinion which binds that court and the lower courts. *See*

Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, §§ 5.8, 9.1.

2. We note that the Debtor did not undertake to prove or assert any damages even in the face of

## D. CONCLUSION

An order consistent with the foregoing reasoning will be entered.

### ORDER

AND NOW, this 10th day of July, 1996, upon further consideration of the Expedited Motion of ROY A. GLENN ("the Debtor") for Turnover Pursuant to 11 U.S.C. § 542 for Sanctions and Violation of 11 U.S.C. § 362 ("the Debtor's Motion") against the Internal Revenue Service ("the IRS"), and the Motion of the IRS seeking relief from the automatic stay to proceed to set off the Debtor's 1995 tax refund against its pre-petition claim ("the IRS's Motion"), after a colloquy which included a stipulation of facts which counsel agreed could constitute the record and the Debtor's Motion on June 6, 1996; a brief hearing on both Motions on June 27, 1996, as scheduled pursuant to our Order of June 12, 1996; and counter-arguments by interested counsel on both June 6, 1996, and June 27, 1996, it is ORDERED AND DECREED as follows:

1. The IRS's Motion is DENIED.

2. The Debtor's Motion is GRANTED.

3. The IRS shall forthwith remit the Debtor's tax year 1995 federal income tax refund of $2,237.00 to the Debtor.

### APPENDIX A

### MEMORANDUM

BY: DAVID A. SCHOLL, Chief Bankruptcy Judge.

The instant motion ("the Motion") of ROY A. GLENN ("the Debtor") seeking a turnover of his 1995 income tax refund of $2,327.00 ("the Refund") from the Internal Revenue Service ("the IRS") and seeking sanctions against the IRS for retaining the Refund was filed on May 9, 1996, and came before this court for a hearing on June 6, 1996. Counsel for the IRS appeared, indicating that the IRS had been served only recently with the Motion, but was prepared to defend the Motion at the hearing. Counsel ultimately proceeded to dictate a stipulation of facts into the record and offered oral argument in support of their respective positions relative to the Motion on that date.

The stipulated facts began with agreement that the instant individual Chapter 13 bankruptcy case was filed by the Debtor on January 12, 1996. Thereafter, the Debtor filed his year 1995 tax return, requesting the Refund. Without filing any motion seeking relief from the automatic stay, the IRS proceeded to "freeze" (its characterization) or setoff (the Debtor's characterization) this sum against the IRS' most recent proof of claim, stipulated to accurately claim $25,743.36, $19,373.36 of which was classified as general unsecured, $4,170.00 as secured, and $2,200.00 as priority.

The parties argued the application of, principally, two cases, *Citizens Bank of Maryland v. Strumpf*, —— U.S. ——, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995); and *In re Hankerson*, 133 B.R. 711 (Bankr.E.D.Pa.1991), *rev'd sub nom. Hankerson v. United States Dep't of Education*, 138 B.R. 473 (E.D.Pa. 1992), to the instant controversy. Specifically, the IRS argued that *Strumpf* authorized its freeze of the Refund. The Debtor contended that the fact that the IRS had not filed for relief from the automatic stay, but intended to permanently retain the Refund without establishing its right to do so, distinguished the instant facts from those of *Strumpf*. He also emphasized the holding by this court in *Hankerson*, not addressed on appeal, that the indebtedness of the IRS to the Debtor for the Refund did not arise until the Refund was authorized, 133 B.R. at 716–17, which, under the instant facts, occurred post-petition.[1] Consequently, the Debtor ar-

---

our statement in the Memo, 1996 WL 332405 at *3 n. 2, that any relief beyond his recovery of the Refund appeared inappropriate.

1. *Hankerson* was reversed on the ground that the IRS was immune from suit, a result supported by the decision in *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), subsequent to our decision. *Nordic Village* was in turn subsequently legislatively overruled by the enactment of 11 U.S.C. § 106(a) in October 1994. *See also* 11 U.S.C. § 106(b), (c) (IRS has filed a claim here). The facts of *Hankerson* are otherwise distinguishable from the instant facts, because the challenged setoff in issue there occurred pre-petition, triggering 11 U.S.C. § 553(b). The instant case indisputably represents a post-petition "freeze" or setoff.

gued that the IRS was impermissibly attempting to set off the post-petition Refund indebtedness of the IRS to him against the Debtor's pre-petition indebtedness to the IRS, in violation of 11 U.S.C. § 553(a). *See Cooper–Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 96–97 (3d Cir.1984); and *In re Lessig Construction, Inc.*, 67 B.R. 436, 441 (Bankr.E.D.Pa.1986). On its part, the IRS argued that the weight of authority supported the principle, contrary to our holding in *Hankerson*, that the indebtedness of the IRS to the Debtor arose at the end of the tax year. *See Harbaugh v. United States*, 1989 WL 139254 (W.D.Pa.1989), *aff'd*, 902 F.2d 1560 (3d Cir.1990); *In re Pettibone Corp.*, 161 B.R. 960, 963 (N.D.Ill.1993), *aff'd in part & remanded on other grounds*, 34 F.3d 536 (7th Cir.1994); *In re Johnson*, 136 B.R. 306, 309 (Bankr.M.D.Ga.1991); *In re Runnels*, 134 B.R. 562, 564 (Bankr.E.D.Tex.1991); *In re Rozel Industries, Inc.*, 120 B.R. 944, 949 (Bankr.N.D.Ill.1990); *In re Ferguson*, 83 B.R. 676, 677 (Bankr.E.D.Mo.1988); *In re Mason*, 79 B.R. 786, 787 (Bankr.N.D.Ill. 1987); and *In re Dominguez*, 67 B.R. 526, 528 (Bankr.N.D.Ohio 1986). Acceptance of this principle would render the indebtedness of the IRS to the Debtor pre-petition and subject to setoff against the Debtor's debt to the IRS under § 553(a).

In light of this latter authority, we are reluctant to render a decision in favor of the Debtor based on our holding in *Hankerson*. We therefore will pursue a path which could conceivably lead to the same result, albeit with some delay. However, since we still believe that the result in *Hankerson* can be supported, we believe it is fair to the Debtor to at least minimize this delay.

Assuming *arguendo* that the IRS correctly asserts that its indebtedness to the Debtor arose pre-petition, the facts of this case appear to fall within the ambit of *United States v. Norton*, 717 F.2d 767 (3d Cir.1983). In that case, the court held that the IRS violated the automatic stay by effecting a setoff of a tax refund against a Chapter 13 debtor who had provided for payment of his indebtedness to the IRS in his confirmed plan. *Id.* at 770–74. Here, as in *Norton*, the IRS seized the Debtor's refund without first obtaining relief from the automatic stay, arguably in violation of 11 U.S.C. § 362(a)(7). *See also United States v. Reynolds*, 764 F.2d 1004, 1006–08 (4th Cir.1985).

While an argument could be made that *Norton* is a controlling authority which requires us to render a decision compelling the IRS to immediately turnover the Refund to the Debtor, two factors cause us to refrain from directing this result. First, although *Norton* does not discuss this issue and it does not appear that the IRS' potential violation of § 553(a) was an issue in that decision, the return set off against the Debtor's pre-petition debt to the IRS in *Norton* was clearly a post-petition obligation of the IRS to the Debtor, since the *Norton* debtor's case was, unlike the instant case, filed before the end of the tax year (1980) which triggered the refund in issue.

Secondly, *Strumpf* may be construed as overruling or at least placing in question the vitality of *Norton*. We make this statement only to follow it with the caveat that we are obliged to follow *Norton* unless and until it is expressly overruled. *See In re Gelletich*, 167 B.R. 370, 373–74 (Bankr.E.D.Pa.1994); *In re Taras*, 136 B.R. 941, 948–49 (Bankr.E.D.Pa. 1992) (taken together, verify that lower courts must be cautious in interpreting Supreme Court decisions in a manner which will overrule earlier controlling Court of Appeals precedent). We note that *Strumpf* did not cite nor purport to overrule *Norton* or its progeny. We also note that *Strumpf* held only that a bank's non-permanent freeze of an account was promptly followed by its motion seeking relief from the automatic stay. —— U.S. at ——–——, 116 S.Ct. at 288–90. Thus, the bank's action was determined "not a setoff within the meaning of § 362(a)(7)." *Id.* at ——, 116 S.Ct. at 289. *Compare Norton, supra*, 717 F.2d at 772 (retention of a post-petition refund due to the debtor by the IRS constitutes a setoff).

We will nevertheless not order the Refund returned to the Debtor unless the IRS persists in its refusal to bring the issue of its right to a setoff before this court and does not prevail as to same by establishing that the Debtor's proposed plan of reorganization,

the terms of which were not presented in this record, does not adequately protect its interests. If the IRS is unwilling or unable to do so, then the Refund will be returned to the Debtor. We will require the IRS to file and serve its motion seeking relief by June 19, 1996, and to prevail at a hearing on any such motion filed on June 27, 1966, if it wishes to retain the Fund. Our order follows.[2]

2. In so ruling, we are compelled to observe that the large general unsecured portion of the IRS' claim will likely result in a Debtor's plan which, unlike that in *Norton,* will not pay the IRS' entire claim. This scenario would render relief to the IRS from the stay likely unless we determine, on the basis of *Hankerson,* that the indebtedness of the IRS to the Debtor for the Refund arose post-petition and is therefore not subject to such a setoff. The only practical effect of this decision may be to require the IRS to bring this issue to a head rather than simply allowing the IRS to observe that it has a valid right to "freeze" a debtor's post-petition return indefinitely, in light of *Strumpf.*

No damages justifying a money recovery were proven by the Debtor here, and any potential award of punitive damages against the IRS is precluded by 11 U.S.C. § 106(a)(3). However, this decision should serve as a "fair warning" to the IRS that its act of effecting an indefinite freeze of a post-petition refund without any prompt follow-up to establish its right to do so appears to be "forbidden." *Compare Norton, supra,* 717 F.2d at 774–75. *See also In re Weatherley,* 169 B.R. 555, 561–63 (Bankr.E.D.Pa.1994) (IRS may be denied relief from the stay where it fails to meet its necessary burdens, as to even an unappealing taxpayer debtor).